## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT W. ODELL, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No.1:22-cv-12290-TLL-PTM |
| | ) | |
| v. | ) | Hon. Thomas L. Ludington |
| | ) | |
| KALITTA AIR, LLC, AND | ) | Magistrate Patricia T. Morris |
| CONRAD ("CONNIE") KALITTA, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS CLAIMS OF CERTAIN PLAINTIFFS PURSUANT TO FED. R. CIV. PRO. 12(b)(1) and THE RAILWAY LABOR ACT

NOW COME Defendants, KALITTA AIR, LLC and CONRAD ("CONNIE") KALITTA, by and through their attorneys, KELSEY LAW GROUP and FITZPATRICK & HUNT, PAGANO, AUBERT LLP, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and move this Court to dismiss certain Plaintiffs' claims, as precluded under the Railway Labor Act 45 U.S.C. § 151, *et seq.* In support hereof, Defendants state as follows:

1.     On September 27, 2022, Plaintiffs filed the present Class Action Complaint, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), naming Kalitta Air, LLC ("Kalitta Air") and Conrad "Connie" Kalitta ("Mr. Kalitta") as defendants. Plaintiffs

allege the Defendant employer improperly discriminated against its employees in the enforcement of the Company's COVID-19 vaccination policy.

2.      Kalitta Air is a Part 121 Air Carrier certified under the Federal Aviation Regulations and is subject to provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq*.

3.      In connection with its business, Kalitta Air is a party to certain Collective Bargaining Agreements ("CBAs") with some of its employee groups, including its pilots.

4.      Relative to the present motion, Plaintiffs Kevin Webber, Austin Robert Isaac Hudnutt, Charles Christian Galton, Christian Tougas and Kevin McAllister are or were pilots employed by Kalitta Air, thus subject to the CBA between Kalitta Air and the Air Line Pilots Association, International ("ALPA") in effect from March 1, 2021 to March 1, 2025.

5.      Because the aforementioned Plaintiffs are or were covered by a CBA with Kalitta Air, their claims arising under Title VII and the ADA are precluded by the RLA, and thus the Court lacks subject matter jurisdiction over them.

6.      Defendants' argument in favor of the present motion is more fully set forth in their Memorandum in Support of Defendants' Motion to Dismiss Claims of Certain Plaintiffs Pursuant to the Railway Labor Act, a copy of which is being filed contemporaneously with this motion and is fully incorporated herein.

7.     Pursuant to Local Rule 7.1(a), counsel for Defendants sought concurrence from Plaintiffs' counsel as to the requested relief and legal basis of the instant motion. Concurrence was denied.

WHEREFORE, Defendants, KALITTA AIR, LLC and CONRAD ("CONNIE") KALITTA, respectfully request that this Court (1) dismiss the claims of Plaintiffs Kevin Webber, Austin Robert Isaac Hudnutt, Charles Christian Galton, Christian Tougas, and Kevin McAllister because they are precluded by the Railway Labor Act, thus divesting this Court of subject matter jurisdiction, and (2) grant such other relief as the Court determines is appropriate and just.

December 2, 2022                              Respectfully Submitted,

                                             **KALITTA AIR, LLC and**
                                             **CONRAD KALITTA**

                                    By:    s/ Nicholas C. Bart
                                           Nicholas C. Bart


Nicholas C. Bart
nick.bart@fitzhunt.com
Mark S. Susina
mark.susina@fitzhunt.com
**FITZPATRICK & HUNT,**
**PAGANO, AUBERT, LLP**
10 South LaSalle Street
Suite 3400
Chicago IL 60603
Tel: (312) 728-4908
Fax: (312) 728-4950

-and-

George W. Kelsey
gkelsey@kelseylaw.com
Karen L. Girard
kgirard@kelseylaw.com
**KELSEY LAW GROUP, P.C.**
49710 Tyler Road Extension
Willow Run Airport
Belleville, Michigan 48111
(734) 973-1222

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

ROBERT W. ODELL, JR., et al.,     )

     )

Plaintiffs,     ) No.1:22-cv-12290-TLL-PTM

     )

v.     ) Hon. Thomas L. Ludington

     )

KALITTA AIR, LLC, AND     ) Magistrate Patricia T. Morris

CONRAD ("CONNIE") KALITTA,     )

     )

Defendants.     )

## DEFENDANTS' MEMORADUM IN SUPPORT OF THEIR MOTION TO DISMISS CLAIMS OF CERTAIN PLAINTIFFS PURSUANT TO FED. R. CIV. P. 12(b)(1) & THE RAILWAY LABOR ACT

NOW COME Defendants, KALITTA AIR, LLC and CONRAD ("CONNIE") KALITTA, by and through their attorneys, KELSEY LAW GROUP and FITZPATRICK & HUNT, PAGANO, AUBERT LLP, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and as their Memorandum in Support of Their Motion to Dismiss Claims of Certain Plaintiffs Pursuant to the Railway Labor Act, state as follows:

5

## STATEMENT OF ISSUE PRESENTED

Are the Plaintiff Pilots' religious and/or disability discrimination claims based on failure to accommodate and retaliation precluded by the mandatory arbitration provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq*. ("RLA").

## <u>CONTROLLING OR MOST APPROPRIATE LEGAL AUTHORITY</u>

- Railway Labor Act, 45 U.S.C. § 151 *et seq.*;

- *Stanley v. ExpressJet Airlines, Inc*., 808 F. App'x. 351, 355 (6th Cir. 2020) (affirming dismissal of religious accommodation claim as precluded under RLA because a court hearing a Title VII claim must assess undue hardship and because an accommodation that violates a CBA's seniority provisions constitutes undue hardship, it would need to interpret the CBA to resolve a Title VII claim on the merits);

- *Stanley v. ExpressJet Airlines, Inc*., 356 F. Supp. 3d 667, 685 (E.D. Mich. 2018) (if the interpretation of the CBA is necessary to determine the proof of the claim then the claim is preempted);

- *TWA v. Hardison,* 432 U.S. 63, 83 (1977) (finding religious accommodation that would violate seniority and bidding policies of CBA was undue hardship on airline);

- *Southwest Airlines Pilots Ass'n. v. Southwest Airlines Co.,* 2021 U.S. Dist. LEXIS 205947 (N.D. Texas, October 26, 2021) (disagreement arising from airline's COVID-19 policies constituted minor disputes subject to compulsory and binding arbitration under the RLA); and

- *Johnson v. United Airlines*, 2021 U.S. Dist. LEXIS 55939 at *7-*10 (E.D. Mich. Feb. 8, 2021) (dismissing plaintiff's discrimination and breach of contract claims as precluded by the RLA because the court would have to interpret and enforce the CBA).

## I.    INTRODUCTION

On September 27, 2022, Plaintiffs filed the present Class Action Complaint, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). The Complaint alleges that Kalitta Air engaged in a pattern of discrimination against its employees in the enforcement of its COVID-19 vaccination policies. Specifically, Plaintiffs claim that they are entitled to religious and/or medical accommodations from the Company's mandatory vaccination requirement as imposed on federal contractors, such as Kalitta Air, by Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors (Sept. 9, 2021). All the Plaintiffs in the present case are either current or former employees of Kalitta Air.

Five of the eleven Plaintiffs are covered by a CBA between Kalitta Air and ALPA. As set forth more fully herein, that CBA is governed by the RLA and incorporates certain mandatory arbitration provisions that preclude the district court's subject matter jurisdiction to adjudicate those claims. 45 U.S.C. § 151, *et seq.* As such, the claims of the Plaintiff Pilots should be dismissed.

## II.    <u>RELEVANT FACTS</u>

1.     Kalitta Air is a Part 121 Air Carrier certified under the Federal Aviation Regulations and is a leading provider of on-demand cargo transportation services throughout the world. [Ex. A, H. Nicholl Decl. at ¶ 4].  Kalitta Air operates a fleet

of Boeing 747 and 777 aircraft and mainly flies internationally. [*Id.*]. Kalitta Air employs crewmembers, check airmen, instructors, mechanics, technicians, and various support administrative and management personnel from its headquarters in Ypsilanti, Michigan. [*Id.*].

2.    Plaintiffs allege Defendant Conrad "Connie" Kalitta is the "sole owner" and Chief Executive Officer of Kalitta Air. [Dkt. #1, Complaint at ¶ 45]. Although Mr. Kalitta is an employee and not the "sole owner" of Kalitta Air, that fact is not germane to the subject of the present Motion.

3.    Two of the Plaintiff Pilots were formerly employed by Kalitta Air: Kevin Webber was a "747 Standards Captain with Kalitta [Air] working in the simulator and classroom to train pilots for the company." [Dkt. #1, Complaint at ¶ 38]; Austin Robert Isaac Hudnutt was a "First Officer with Kalitta [Air]." [*Id.* at ¶ 39].

4.    Two of the Plaintiff Pilots, Christian Tougas, a "First Officer with Kalitta [Air]," and Charles Christian Galton, also "a First Officer with Kalitta [Air]," are presently on unpaid leave. [*Id.* at ¶¶ 40, 41].

5.    One Plaintiff Pilot, Kevin McAllister**,** is presently employed by Kalitta Air. [*Id.* at ¶ 43].

6.    The Plaintiff Pilots are covered by a CBA between Kalitta Air, LLC, and the Airline Pilots in the Service of Kalitta Air, LLC, as represented by the Air

Line Pilots Association, International ("ALPA"), with a duration of March 1, 2021 to March 1, 2025 (the "CBA"). [*See* Ex. B, Excerpts from Kalitta-ALPA Collective Bargaining Agreement (hereinafter "CBA Excerpts")].

7.      On or about September 9, 2021, the federal government enacted Executive Order ("EO") 14042, which imposed a requirement that government contractors, such as Kalitta Air, adopt and enforce a vaccine mandate or lose their government contracts. [Dkt. #1, Complaint at ¶ 6; *see also,* Ex. D, Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, 86 Fed. Reg. 50985 (Sept. 9, 2021) (hereinafter "Executive Order" or "EO" 14042) (federal contracts must include a clause compelling contractors and subcontractors to comply with prescribed COVID-19 workplace safety requirements for the duration of the contracted work, including a mandate that federal contractor employees be vaccinated against COVID-19 by January 18, 2022)]. Neither the EO nor related guidance include an option for regular testing for unvaccinated individuals.

8.      Consistent with the federal mandate, on October 11, 2021, Kalitta Air announced that all employees would be required to have a COVID-19 vaccine. [Dkt. #1, Complaint at ¶ 57].

9.      All of the Plaintiff Pilots claim a right to a religious and/or medical accommodation from the Company's COVID-19 vaccination policies. [*Id.* at ¶¶ 37-40, 43].

10.    Kalitta Air approved all requests for accommodation and placed any employee who was not fully vaccinated on unpaid leave. [*Id.* at ¶ 3].

11.    On or about November 24, 2021, the Plaintiffs' union, ALPA, filed a grievance pursuant to the minor dispute process of the Pilot's CBA complaining that the Company's vaccination mandate and its handling of the pilot's requests for religious and/or medical exemptions from the mandate violate various sections of the CBA. [Ex. C, ALPA Nov. 24, 2021 Grievance Re: Mandatory COVID-19 Vaccine Policy (hereinafter "ALPA COVID-19 Grievance")].

12.    Plaintiffs fashion their Complaint as a proposed class action, "brought to remedy Kalitta [Air]'s pattern of discrimination against employees entitled to religious and/or medical accommodations from Kalitta [Air]'s mandate that its employees receive the COVID-19 vaccine, as well as Kalitta [Air]'s retaliation against those who made requests for accommodations." [Dkt. #1, Complaint at ¶ 2].

13.    The Complaint includes five counts, alleging violations of Title VII and the ADA. [*Id.* at ¶¶ 272-318]. Plaintiffs merely refer to conduct of "Kalitta" in those counts, which is defined in the Complaint as "Kalitta Air, LLC."  [*Id.* at ¶ 1].

14.    The Complaint requests, *inter alia*, that the Court declare that Kalitta Air violated Title VII and the ADA by failing to engage in the interactive process and/or provide reasonable accommodations to its COVID-19 vaccine mandate. [*Id.* at ¶¶ 97-98].

### III.   ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim over which it lacks subject matter jurisdiction. A Rule 12(b)(1) motion may attack the factual existence of subject matter jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60. "Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* at 760.

The Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, governs labor relations in the airline industry. *See Id.* at §§ 181-188.  The RLA imposes a duty on carriers and employees to make every reasonable effort to make and maintain agreements concerning, *inter alia*, rules and working conditions and to settle all disputes to avoid interruption to the carrier's operation. *Id.* at § 152. To effectuate peaceful dispute resolution, the RLA sets out a "mandatory and virtually endless process of negotiation, mediation, voluntary arbitration, and conciliation." *BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers*, 973 F.3d 326, 334 (5th Cir. 2020) (quoting *Burlington N. R.R. v. Bhd. Of Maint. of Way Emps.*, 481 U.S. 429, 444 (1987)). That "mandatory arbitral mechanism ... [creates] two classes

12

of disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-253 (1994). As

the Supreme Court explained in *Norris*:

> The first class, those concerning rates of pay, rules or working
> conditions, are deemed "major" disputes. Major disputes relate to
> the formation of collective [bargaining] agreements or efforts to
> secure them. The second class of disputes, known as "minor"
> disputes, grow out of grievances or out of the interpretation or
> application of agreements covering rates of pay, rules, or working
> conditions. Minor disputes involve controversies over the meaning
> of an existing collective bargaining agreement in a particular fact
> situation.

*Id*. In other words, "major disputes seek to create contractual rights, minor disputes

to enforce them." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n* ("Conrail"),

491 U.S. 299, 302 (1989). Minor disputes contemplate the existence of a collective

bargaining agreement ("CBA") and relate to the meaning or application of a

particular provision. *Int'l Brotherhood of Teamsters v. UPS Co.*, 447 F.3d 491, 496

(6th Cir. 2006); *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945).

A proposed action creates a minor dispute "if the action is arguably justified

by the terms of the parties' collective bargaining agreement." *Conrail*, 491 U.S. at

307. As the Supreme Court and this circuit have repeatedly held, when a claim can

be resolved conclusively by the CBA, the claim is precluded and must be brought

before an arbitrator, not a court. *Norris*, 512 U.S. at 252; *Emswiler v. CSX Transp.,

Inc.*, 691 F.3d 782, 792 (6th Cir. 2012). As such, district courts do not have

jurisdiction over minor disputes. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 435 (5th Cir. 2021); 45 U.S.C. § 153.

Courts in the Sixth Circuit apply a two-step test to determine whether a CBA preempts a claim. First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms, and second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state or federal law. *Stanley v. ExpressJet Airlines, Inc*., 808 F. App'x. 351, 355 (6th Cir. 2020) (citing *DeCoe v. GMC*, 32 F.3d 212, 216 (6th Cir. 1994)). "If the 'claim is not a purely factual question about . . . an employer's conduct and motives and cannot be decided without interpretation of the CBA,' it is preempted." *Stanley v. ExpressJet Airlines, Inc*., 356 F. Supp. 3d 667, 685 (E.D. Mich. 2018) (quoting *Emswiler*, 691 F.3d at 793). "If the right is created by the CBA *or* if the interpretation of the CBA is necessary to determine the proof of the claim, then the claim is preempted." *Stanley*, 808 F. App'x. at 355 (emphasis in original).

**A. The Pilots' Claims Are Precluded By The Railway Labor Act**

The Plaintiff Pilots allege that Kalitta Air discriminated against them in violation of Title VII and the ADA by refusing to grant them their desired accommodation to allow them to remain unvaccinated against COVID-19 contrary to the mandate of EO 14042 and Kalitta Air's COVID-19 policies. Specifically,

Plaintiffs assert that Kalitta Air could have allowed them to continue to fly with regular testing, natural immunity and/or allow masking in lieu of vaccination. [Dkt. #1, Complaint at ¶¶ 19-21]. Plaintiffs further argue that Kalitta Air could have altered the unvaccinated pilots' flying schedules to exclude them from having to fly to any foreign country that requires COVID-19 vaccinations. [*Id.* at ¶ 212].

Although Kalitta Air did grant each of the Plaintiff Pilots an accommodation, Plaintiffs take issue with the reasonableness of the accommodation. Any evaluation of the propriety of Kalitta Air's chosen accommodation, and therefore the proof of the Plaintiff Pilots' claims, necessarily requires an interpretation of the Company's rights and obligations under the CBA. Thus, the only issue before the Court on this Motion is whether the claims by the Plaintiff Pilots require interpreting the CBA. If so, the claims are precluded by the RLA.

Fatal to the present action is the fact that the Plaintiff Pilots' representative union has already filed a Grievance regarding Kalitta Air's administration of the Plaintiff Pilots' accommodation requests under the minor dispute resolution procedures of the Pilots' CBA. [*See* Ex. C, ALPA COVID-19 Grievance]. The Plaintiff Pilots elected ALPA to serve as their "duly designated and authorized representative … for the purposes of the Railway Labor Act, as amended." [Ex. B, CBA Excerpts at § 1(A), "Recognition"]. Thus, the Plaintiff Pilots' authorized representative has conceded that the present dispute requires the interpretation of the

CBA. When a dispute necessarily entails the interpretation or administration of a CBA, there's no room for individual employees to sue because the RLA preempts any attempt to overrule a union's choices on behalf of its workers. *See, e.g., Debeikes v. Hawaiian Airlines, Inc*., 141 F. Supp. 3d 1075, 1100 (D. Haw. 2015) (finding preemption based on failure to follow CBAs grievance procedures). On the contrary, the RLA and the CBA convey exclusive jurisdiction over minor disputes to the System Board of Adjustment, and a party cannot bypass the Board and take the dispute into federal court. *See Norfolk Southern R. Co. v. Int'l Longshoremen's Ass'n, Local 1913*, 190 F. Supp. 2d 1021, 1026 (N.D. Ohio 2002).

> The Plaintiff Pilots' union grievance states, in relevant part:

> In unilaterally imposing this vaccination mandate in a generic, vague manner on all employees, the Company failed to account for the unique medical standards that apply to pilots under the Collective Bargaining Agreement dated March 1, 2021 ("CBA"). Section 11 of the CBA governs pilot medical standards. Subparagraph 11.A states that the "medical standards *required* of a Crewmember will be those established by the FAA, including its waiver policy."

[Ex. C, ALPA COVID-19 Grievance (emphasis added)].

The union's grievance further alleges, "the Company failed to negotiate to conclusion with the Association, the inevitable effects of implementing the vaccination policy on pilot working conditions, including, but not limited to, scheduling, pay, and expenses." [*Id.*]. The Plaintiffs' union concluded that "the

Company's actions violate Subsections 1.A and 11 of the CBA, and any other relevant sections of the CBA…" [*Id.*]. That Grievance is currently pending.

The Pilots' CBA itself is almost 300 pages in length and covers almost every aspect of the working relationship between the Plaintiff Pilots and Kalitta Air. The CBA outlines the mechanics for determining nearly all the Plaintiff Pilots' working conditions and business operations. As the Plaintiff Pilots' union concedes, several sections of the CBA may be implicated by the administration of Kalitta Air's COVID-19 policy, the denial of the Plaintiff Pilots' requested accommodation, and their placement on unpaid leave, including, but not limited to, Sick Leave (§ 7), Physical Examinations (§ 11), Seniority (§ 13), Scheduling (§ 17), Leaves of Absence (§ 12), Hours of Service (§ 18) and Resolution of Disputes (§ 20). [*See generally*, Ex. B, CBA Excerpts, Table of Contents, pp. i-x].

Kalitta Air has neither the authority nor obligation to carve out special exceptions to any of the foregoing provisions of the CBA to grant a religious or medical accommodation. In a Title VII religious discrimination claim, an employer must provide reasonable accommodation *unless* it would pose an undue hardship. *See TWA v. Hardison,* 432 U.S. 63, 83 (1977).

Here the Plaintiff Pilots' CBA details a seniority system that forms the basis for a pilot's work schedule known as "lines." The lines are created through a seniority-based bidding system in which pilots submit preferences for line options

including dates and length of travel, routes, layovers and aircraft type. Those preferences are used to create lines, which are the specific trips a pilot flies and are assigned based on seniority. [Ex. B, CBA Excerpts at §§ 13, Seniority, and 17, Scheduling].

In addition, the Pilots' CBA provides:

1. The parties agree to apply this Agreement and the Railway Labor Act, as amended, without limitation, to Crewmembers and Company aircraft and associated operations outside the United States.

2.  Notwithstanding subsection 1.I.i, above, **the Company is not required to assign a Crewmember to a trip if the Crewmember lacks the necessary visas, vaccines and permits to perform such work.** The Company will use reasonable efforts to assist Crewmembers to obtain the necessary visas, vaccines, and permits.

[*Id.* at § 1, "Recognition, Purpose, Scope" at p. 9 (emphasis added)].

Kalitta Air cannot unilaterally elect to grant an accommodation that would require it to violate the foregoing procedures and systems under the CBA. As in *TWA, supra*, an airline is not required to grant a religious accommodation if doing so would require the airline to violate the provisions of its CBA. *TWA*, 432 U.S. at 78-79.

This Circuit has already addressed this issue. In affirming this court's dismissal of a flight attendant's Title VII religious discrimination claim stemming from the employer airline's denial of her request for accommodation, the Sixth Circuit confirmed that the claim was preempted by the RLA. *See Stanley*, 808 F.

18

App'x. 351 at 355-56. In *Stanley* the Sixth Circuit found, "any court seeking to address [Plaintiff's] religious-discrimination claims must interpret the CBA." *Id* at 356. The Stanley court further noted, "[b]ecause a court hearing a Title VII claim must assess undue hardship and because an accommodation that violates a CBA's seniority provisions constitutes undue hardship, we would need to interpret the CBA to resolve [Plaintiff's] Title VII claim on the merits." *Id*. As the CBA would resolve the issue, Plaintiff's claims were precluded by the RLA. *See also, Ellington v. United Airlines*, 2021 U.S. Dist. LEXIS 183645 at *15-*20 (N.D. Ohio July 30, 2021) (finding that because the nature of plaintiff flight attendant's FMLA claims requires interpretation of the CBA, the RLA precludes the claims and mandates arbitration); *Johnson v. United Airlines*, 2021 U.S. Dist. LEXIS 55939 at *7-*10 (E.D. Mich. Feb. 8, 2021) (dismissing plaintiff's discrimination and breach of contract claims as precluded by the RLA because the court would have to interpret and enforce the CBA).

Title VII does not require an employer to accommodate the religious needs of an employee where more than a *de minimis* cost is required to do so. *See TWA,* 432 U.S. at 83 (finding religious accommodation that would violate seniority and bidding policies of CBA was undue hardship on airline). In other words, an accommodation that results in more than a *de minimis* cost to the employer, such as additional costs arising from lost efficiency or higher wages, constitutes an undue hardship. *See also*

*Virts v. Consolidated Freightways Corp.,* 285 F.3d 508, 516 (6th Cir. 2002); 42 U.S.C. § 2000e(j). As Plaintiffs admit, whether a reasonable accommodation imposes an undue hardship is evaluated with regard to the employer's specific situation. [Dkt. #1, Complaint at ¶ 94 (quoting *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 568 (6th Cir. 2022))].

The RLA preemption analysis applies equally to state and federal law claims as well as to claims for both religious and disability discrimination. *See, e.g., Stanley*, 808 F. App'x. at 355 (affirming dismissal of Title VII religious discrimination claims as preempted under the RLA); *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 347 (5th Cir. 2008) (same in ADA and FMLA contexts); *Ralph v. Lucent Techs., Inc.,* 135 F.3d 166, 171 (1st Cir. 1998) (same in ADA context). Therefore, the resolution of any minor disputes, including the present claims, must follow the process set forth in the CBA and cannot be filed with the Court.

Another District Court recently reached the same conclusion in denying injunctive relief and dismissing a suit brought by the Southwest Airlines Pilots' Association relating to the carrier's COVID-19 vaccination mandate. *See Southwest Airlines Pilots Ass'n. v. Southwest Airlines Co.,* 2021 U.S. Dist. LEXIS 205947 (N.D. Texas, October 26, 2021). There, the Court held that the airline pilots' union was not entitled to temporary and preliminary injunctive relief from the airline's COVID-19 policies because the disagreement arising from the policies constituted

20

minor disputes subject to compulsory and binding arbitration under the RLA. *Id.* at *24-*37. As such, the Court lacked subject matter jurisdiction over the dispute.

The same result is mandated here. For the court to determine whether allowing the Plaintiff Pilots to work unvaccinated would pose an undue hardship/more than a *de minimis* cost, it would be required to interpret the respective rights and obligations of the parties under the CBA. *See, e.g., Stanley,* 808 F. Appx. 351; *Reece v. Houston Lighting & Power Co.,* 79 F.3d 485, 487 (5th Cir. 1996); *Emswiler v. CSX Transp. Inc.,* 691 F.3d 782, 793 (6th Cir. 2012). Because this dispute is grounded in the Pilots' CBA, it is a minor dispute under the RLA, and therefore, the Court lacks subject matter jurisdiction over these claims. *See also Ne. Ill. Reg'l Commuter Rail Corp. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers*, 578 F. Supp. 3d 985 (N.D. Ill. 2022) (dismissing the union's motion for preliminary injunction and holding that the dispute regarding commuter rail service's implementation of COVID-19 vaccine mandate was a "minor" dispute under the RLA that would have to be resolved by binding arbitration.)

Similarly, to decide if unpaid leave was retaliatory, the court must examine whether the Plaintiff Pilots were placed on unpaid leave because they requested an accommodation or because they were no longer able to perform all their job duties and could not be accommodated under the provisions of the CBA. That determination necessarily requires the court to interpret the CBA.

21

Here, it is evident that the Plaintiff Pilots' claims of religious discrimination under Title VII and Plaintiff Tougas' claim of disability discrimination under the ADA are minor disputes within the meaning of the RLA.

## IV.    CONCLUSION

For the reasons set forth herein, all claims filed by Plaintiffs Kevin Webber, Austin Robert Isaac Hudnutt, Christian Tougas, Charles Christian Galton and Kevin McAlister are precluded by the Railway Labor Act, and therefore should be dismissed.

December 2, 2022                          Respectfully Submitted,

**KALITTA AIR, LLC and**
**CONRAD ("CONNIE") KALITTA**


By:    s/ Nicholas C. Bart
Nicholas C. Bart

Nicholas C. Bart
nick.bart@fitzhunt.com
Mark S. Susina
mark.susina@fitzhunt.com
**FITZPATRICK & HUNT,**
**PAGANO, AUBERT, LLP**
10 South LaSalle Street
Suite 3400
Chicago IL 60603
Tel: (312) 728-4908
Fax: (312) 728-4950

-and-

George W. Kelsey
gkelsey@kelseylaw.com
Karen L. Girard
kgirard@kelseylaw.com
**KELSEY LAW GROUP, P.C.**
49710 Tyler Road Extension
Willow Run Airport
Belleville, Michigan 48111
(734) 973-1222

## CERTIFICATE OF SERVICE

I, Nicholas C. Bart, certify that on December 2, 2022, I electronically filed the foregoing ***MOTION OF DEFENDANT KALITTA AIR TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) and BRIEF in SUPPORT THEREOF*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 2nd day of December 2022.

s/ Nicholas C. Bart
**FITZPATRICK & HUNT, PAGANO, AUBERT LLP**
10 South LaSalle St., Suite 3400
Chicago, IL 60603
(312)728-4901
State Bar No. 6257719 (IL)

George W. Kelsey
gkelsey@kelseylaw.com
Karen L. Girard
kgirard@kelseylaw.com
**KELSEY LAW GROUP, P.C.**
49710 Tyler Road Extension
Willow Run Airport
Belleville, Michigan 48111
(734) 973-1222