# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  July 09, 2024

Mr. Nicholas C. Bart
Fitzpatrick & Hunt, Pagano, Aubert
10 S. LaSalle Street
Suite 3400
Chicago, IL 60603

Mr. George W. Kelsey
Kelsey Law
49710 Tyler Road Extension
Belleville, MI 48111

Mr. Walker D. Moller
Siri & Glimstad
1005 Congress Avenue
Suite 925-C36
Austin, TX 78701

Mr. David Austin Robert Nimocks
Mr. John Clay Sullivan
S. L. Law
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104

Re:  Case No. 23-1703, *Robert Odell, Jr., et al v. Kalitta Air, LLC, et al*
Originating Case No. : 1:22-cv-12290

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0148p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

ROBERT W. ODELL, JR., et al.,

*Plaintiffs,*

KEVIN WEBBER; AUSTIN ROBERT ISAAC HUDNUTT; CHRISTIAN TOUGAS; CHARLES CHRISTIAN GALTON; ESTATE OF KEVIN MCALLISTER,

*Plaintiffs-Appellants,*

> No. 23-1703

*v.*

KALITTA AIR, LLC; CONRAD KALITTA, in his official capacity,

*Defendants-Appellees.*

―――――――――――

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:22-cv-12290—Thomas L. Ludington, District Judge.

Argued:  March 21, 2024

Decided and Filed:  July 9, 2024

Before:  BATCHELDER, MOORE, and CLAY, Circuit Judges.

―――――――――――

## COUNSEL

**ARGUED:**  John C. Sullivan, S | L LAW PLLC, Cedar Hill, Texas, for Appellants.  Nicholas C. Bart, FITZPATRICK & HUNT & PAGANO, Chicago, Illinois, for Appellees.  **ON BRIEF:** John C. Sullivan, S | L LAW PLLC, Cedar Hill, Texas, Walker Moller, SIRI GLIMSTAD, Austin, Texas, for Appellants.  Nicholas C. Bart, FITZPATRICK & HUNT & PAGANO, Chicago, Illinois, George W. Kelsey, KELSEY LAW GROUP, P.C., Belleville, Michigan, for Appellees.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge.  During the COVID-19 pandemic and in response to Executive Order 14042, Kalitta Air, LLC ("Kalitta") implemented a vaccine mandate for all of its employees.  Kalitta purportedly granted religious and medical accommodations to the mandate by providing employees with three and twelve months, respectively, of unpaid leave, after which employees would be terminated if they remained unvaccinated.  Eleven employees, ("Plaintiffs"), including five pilots (the "Pilot Plaintiffs"), sued Kalitta under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"), claiming that the mandate discriminated against them on the basis of their religious beliefs and/or disabled status.  The district court found that, because the Pilot Plaintiffs were subject to a collective bargaining agreement ("CBA"), the Railway Labor Act ("RLA") precluded it from hearing certain of their Title VII and ADA claims, which must first go through arbitration as minor disputes.  The Pilot Plaintiffs timely appealed.  The other six Plaintiffs' claims are not before this court on appeal.  We AFFIRM the district court's Order regarding the Pilot Plaintiffs.

## I. BACKGROUND

### A.  Kalitta's Vaccine Requirement

Kalitta is a cargo airline that is headquartered in Ypsilanti, Michigan, and is owned by Conrad Kalitta ("Conrad").  R. 1 (Compl. ¶¶ 44–45) (Page ID #21).  On October 11, 2021, Kalitta issued an employee notice in response to the COVID-19 pandemic and Executive Order 14042 ("EO 14042"), stating that "Kalitta would be complying with the EO and that every employee would have to be vaccinated."  R. 1-2 (Odell Decl. ¶¶ 10–12) (Page ID #105–06).  The Kalitta notice also stated that employees "who [were] unable to receive a vaccination, due to a disability or a sincerely held religious belief, can request an accommodation . . . by October 31, 2021, and will be placed on an unpaid leave effective December 8, 2021."  *Id.* ¶ 12 (Page ID #105–06) (emphasis omitted).

On October 15, 2021, Conrad circulated a letter to Kalitta employees stating that pursuant to EO 14042, all Kalitta employees were required to be vaccinated by December 8, 2021.  R. 26-4 (Oct. 15, 2021 Letter) (Page ID #357).  The letter explained that after "consulting with legal firms," Conrad believed that if Kalitta did not comply with EO 14042 it would "lose all current and future Federal contracts," would be "prevented from doing business with" numerous companies, and could run into issues with foreign countries that were "beginning to require proof of vaccination."  *Id.*  Conrad also offered a $1,000 payment to employees who had been or would be "fully vaccinated by the December 8th deadline."  *Id.*  On an October 19, 2021 conference call, Kalitta's Vice President of Human Resources allegedly stated that even if employees who had received an accommodation could return to work, Kalitta did not "want them back."  R. 1-9 (Tougas Decl. ¶¶ 8–9) (Page ID #166–67).

Employees who submitted a request for an exemption from the vaccine mandate for "religious, ethical, moral, [or] personal beliefs" received a letter from Kalitta stating that their exemption was granted.  *See* R. 26-5 (Nov. 2, 2021 Religious Exemption Letter) (Page ID #359) (emphasis omitted).  Kalitta's accommodation for these employees consisted of "an unpaid leave of absence starting December 9, 2021 for ninety (90) days," after which the employee could either "voluntarily resign or . . . be terminated."  *Id.*  Employees who applied for medical exemptions received unpaid leave for twelve months, after which they could similarly voluntarily resign or be terminated.  R. 26-6 (Nov. 2, 2021 Medical Exemption Letter) (Page ID #361).  Kalitta announced that, after November 24, 2021, it would seek to fill unvaccinated employees' positions, and that the employees could apply for reemployment but were not guaranteed a return to the company.  *Id.*; R. 26-5 (Nov. 2, 2021 Religious Exemption Letter) (Page ID #359).  Attached to Kalitta's "Approval" letters was a Frequently Asked Questions document, which explained that the vaccine requirement also applied to fully remote workers and "employees with a prior COVID-19 infection."  R. 1-2 (Odell Decl. ¶¶ 23–24) (Page ID #108).

**B.  Railway Labor Act and Kalitta's Collective Bargaining Agreement**

The Railway Labor Act ("RLA") governs and provides remedies for labor disputes in the airline industry.  45 U.S.C. §§ 151, 181–82.  Labor disputes are divided into two categories:

(1) major disputes, which "concern the formation of collective bargaining agreements [("CBAs")]"; and (2) minor disputes, which deal with interpreting existing CBAs. *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 785 (6th Cir. 2012). Minor disputes are initially settled through "contractually agreed-upon grievance procedures," or "'on the property' remedies." *Id.* If they are not resolved "on the property," minor disputes must be resolved through arbitration by either the National Railroad Adjustment Board ("Board") or "a privately established arbitration panel." *Id.* Judicial review of the Board's decision is restricted to: "(1) failure of the Adjustment Board to comply with the requirements of the [RLA]; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption." *Id.* (quoting *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978)).

Kalitta has a CBA in place with the Air Line Pilots Association, International ("ALPA"), that governs the Pilot Plaintiffs and that includes several sections which the Defendants argued could be impacted by Kalitta's COVID-19 policy, including Sick Leave (§ 7); Physical Examinations (§ 11); Leaves of Absence (§ 12); Seniority (§ 13); Scheduling (§ 17); Hours of Service (§ 18); and Resolution of Disputes (§ 20). R. 19 (Defs.' Mot. to Dismiss at 17) (Page ID #262); *see also generally* R. 19-2 (CBA Excerpts) (Page ID #275–318). Neither Kalitta nor the Pilot Plaintiffs provided a full text of Kalitta's CBA (or even the relevant provisions). Under the CBA, pilots use a "seniority-based bidding system" to create their flight schedules. R. 19 (Defs.' Mot. to Dismiss at 17–18) (Page ID #262–63). This bidding system allows pilots to "submit preferences for" scheduling options, such as "dates and length of travel, routes, layovers[,] and aircraft type." *Id.* The CBA also provides that Kalitta "is not required to assign a Crewmember to a trip if the Crewmember lacks the necessary visas, vaccines and permits to perform such work," and that Kalitta "will use reasonable efforts to assist Crewmembers to obtain the necessary visas, vaccines, and permits." R. 19-2 (CBA Excerpts at 9) (Page ID #295). Kalitta stated that granting accommodations to pilots could frustrate the seniority-based bidding process if Kalitta had to start altering schedules to account for unvaccinated pilots, which would lead it to "violate the foregoing procedures and systems under the CBA." R. 19 (Defs.' Mot. to Dismiss at 15, 17–18) (Page ID #260, 262–63).

On November 24, 2021, ALPA filed a grievance claiming that Kalitta's vaccine mandate violated Sections 1.A, 4, and 11 of the CBA.  R. 19-3 (Nov. 24, 2021 ALPA Grievance at 1) (Page ID #320).  In a later email, ALPA's Senior Labor Relations Counsel stated that the proper avenue for those with an exemption to protest an accommodation (or lack thereof) was "through an EEOC complaint," rather than through the CBA's grievance system.  R. 27-4 (Dec. 13, 2021 ALPA Email) (Page ID #403); *see also* R. 42-2 (ALPA Nov. 8, 2021 Vaccine Update at 3) (Page ID #547).  For pilots who "were terminated for being unvaccinated and who also did not have an exemption," though, ALPA pursued a grievance pursuant to the CBA.  R. 27-4 (Dec. 13, 2021 ALPA Email) (Page ID #403); *see also* R. 30-1 (ALPA Grievance (Griffin) at 1–2) (Page ID #443–44).  When Kalitta did not respond to the grievance, ALPA then appealed to the System Board of Adjustment regarding at least four individual Kalitta pilots.  *See, e.g.*, R. 30-1 (ALPA Grievance Appeal (Griffin) at 1–3) (Page ID #445–47).[1]

## C.  Procedural History

In September 2022, the eleven Plaintiffs, who had requested an accommodation and received a Religious or Medical Exemption letter, brought a putative class action against Kalitta and Conrad, claiming that Kalitta had failed to comply with Title VII and the ADA.  R. 1 (Compl. ¶¶ 2–3) (Page ID #2–3).[2]  The employees claimed that Kalitta's placing them on unpaid leave "was not a reasonable accommodation" and demonstrated "the company's discriminatory intent."  *Id.* ¶ 3 (Page ID #2–3).  They also alleged that Kalitta had the ability to make reasonable accommodations, such as regular testing, "recogniz[ing] natural immunity," masking, or not scheduling unvaccinated pilots for flights to countries requiring vaccination, and that Kalitta's justifications for failing to use these alternatives were "pretextual and unsupported by fact."  *Id.* ¶¶ 18–22, 212 (Page ID #9–12, 72).  The Plaintiffs' complaint included five Counts:  (1) Count I, Religious Discrimination—failure to provide reasonable accommodation; (2) Count II, Religious discrimination—retaliation; (3) Count III, Disability discrimination—failure to accommodate; (4) Count IV, Disability discrimination—retaliation; and (5) Count V, Disability

---

[1] Based on the available record, it does not appear that any of the Pilot Plaintiffs are involved in this process.

[2] To date, this class has not been certified.

discrimination—discrimination based on perceived disability.  R. 1 (Compl. ¶¶ 272–318) (Page ID #89–97).

On December 2, 2022, Kalitta filed a Motion to Dismiss the Plaintiffs' Complaint for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and the RLA, arguing that the Pilot Plaintiffs'[3] claims were precluded and had to be brought before an arbitrator.  R. 19 (Defs.' Mot. to Dismiss at 13–15) (Page ID #258–60).  The magistrate judge construed the motion to dismiss as a motion for summary judgment and gave the parties leave to supplement their briefing or seek additional time to conduct discovery.  R. 34 (Notice of Intent at 4) (Page ID #483).  The Defendants rested on their initial briefs, R. 37 (Defs.' Notice of Waiver at 2) (Page ID #500), but the Plaintiffs requested that the magistrate judge defer consideration pending additional discovery, R. 38 (Pls.' Mot. to Den. or Defer at 2) (Page ID #503).  The Defendants opposed the motion and asked for a ruling on the motion for summary judgment. R. 41 (Defs.' Resp. in Opp'n at 3) (Page ID #518).  The magistrate judge issued a Report and Recommendation determining that the RLA precluded the court from hearing the merits of the Pilot Plaintiffs' Counts I, III, and V (Title VII and ADA claims for failure to accommodate and ADA claim for discrimination based on perceived disability, respectively) because they were "minor disputes" that would require the court to interpret the CBA.  *Odell v. Kalitta*, 678 F. Supp. 3d 904, 911–12, 920 (E.D. Mich. 2023) (adopting the magistrate judge's Report and Recommendation in full after conducting de novo review)[4]  The magistrate judge explained that adjusting the Pilot Plaintiffs' schedule to provide their requested accommodations could impact the CBA's "seniority-based bidding system," and that determining whether this was a sufficiently undue hardship would require interpretation of the CBA's terms.  *Id.* at 919.  The

---

[3]The five Pilot Plaintiffs are:  Kevin Webber (religious accommodation requested); Austin Robert Isaac Hudnutt (religious accommodation requested); Christian Tougas (religious and medical accommodations requested); Charles Galton (attempted to request religious accommodation); and Kevin McAllister (religious accommodation requested).  R. 43 (R. & R. at 30) (Page ID #585); *see also* R. 49 (Clarifying Order at 2) (Page ID #799).  The magistrate judge dismissed Charles Galton and Kevin McAllister from the case entirely because they did not bring retaliation claims, the only remaining claims in the litigation.  R. 43 (R. & R. at 30) (Page ID #585).  Kevin McAllister is since deceased.  Appellee Br. at 2.

[4]The magistrate judge determined that Counts II (religious discrimination—retaliation) and IV (disability discrimination—retaliation) did not require a court to interpret the CBA and recommended denying the motion for summary judgment as to these two counts.  *Odell*, 678 F. Supp. 3d at 911–12.  On appeal, Kalitta does not challenge this ruling because it is not part of the Federal Rule of Civil Procedure 54(b) final judgment.

magistrate judge also recommended that the district court issue its summary-judgment ruling without additional discovery because "[a]ll of the additional evidence sought by the Pilots is irrelevant to Kalitta's motion." *Id.* at 924. The district court adopted the magistrate judge's Report and Recommendation. *Id.* at 911–12; *see also* R. 49 (Clarifying Order at 1–3) (Page ID #698–700).[5]

## II. DISCUSSION

### A. Standard of Review

We review de novo the issue of subject-matter jurisdiction. *Flight Options, LLC v. Int'l Brotherhood of Teamsters, Local 1108*, 863 F.3d 529, 538 (6th Cir. 2017). Likewise, we review de novo a district court's grant of summary judgment. *Emswiler*, 691 F.3d at 788. "Summary judgment is appropriate where there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). The district court could reach the merits of the Pilot Plaintiffs' claims and grant relief only if it did not have to interpret the CBA in order to resolve the claims. *Cf. id.* at 792 ("If [the plaintiff's] . . . discrimination claim is preempted by the RLA, then he is required to pursue the RLA-mandated arbitral process before bringing his claim to court, and his failure to do so precludes consideration of the merits.").[6]

---

[5]After the district court issued an Opinion and Order adopting the magistrate judge's Report and Recommendation, R. 45 (Op. & Order) (Page ID #642–45), the district court issued an additional order, clarifying that its Opinion and Order was "final as to the dismissed claims [Claims I, III, and V] and parties," R. 49 (Clarifying Order at 1) (Page ID #798). The district court confirmed that "finality under [Federal Rule of Civil Procedure] 54(b) [was] apt" with regards to the remaining claims and stated its belief that the issue of preclusion "should be decided before the parties advance to discovery." *Id.* at 1–2 (Page ID #798–99).

[6]The RLA potentially precludes causes of action that arise out of a federal statute and potentially preempts causes of action that arise out of state law. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6 (1994). We have tended to use the two terms interchangeably when referring to RLA claims. *See Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 352 n.1 (6th Cir. 2020). The only claims on appeal are causes of action that arise out of federal statutes, so we use "preclusion" throughout this opinion when referring to the Pilot Plaintiffs' claims. In *Hawaiian Airlines*, the Supreme Court applied a case dealing with preclusion to a preemption issue, stating that the distinction did not "rob" the preclusion case "of its force in this context," reasoning that the "[p]rinciples of federalism demand no less caution in finding that a federal statute pre-empts state law." *Hawaiian Airlines*, 512 U.S. at 259 n.6.

## B.  Claims of Failure to Accommodate (Counts I & III)

The Pilot Plaintiffs first argue that the district court erred when it found that it would have to evaluate their CBA in order to issue a ruling on the merits with regards to their Title VII and ADA claims of failure to accommodate.  Appellant Br. at 30.  They allege that, although the court may have to look at the CBA's terms, the RLA does not preclude federal-court jurisdiction because the CBA does not conclusively resolve their claims.  *Id.*  Kalitta maintains that because the Pilot Plaintiffs' claims require a decisionmaker to interpret the CBA, the RLA mandates that the dispute be settled through arbitration.  Appellee Br. at 17.  We hold that the Pilot Plaintiffs' Title VII and ADA claims of failure to accommodate require interpretation of the CBA, and that the RLA precluded the district court from hearing these claims.

Mere mention of a CBA does not suffice to prevent employees' claims from being heard in federal court.  If an employee's "'action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the [CBA] and of the R.L.A.,' exclusive jurisdiction of the [Board] preempts the action." *Stephens v. Norfolk & W. Ry. Co.*, 792 F.2d 576, 580 (6th Cir. 1986) (quoting *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367, 1369 (9th Cir. 1978)); *see also Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 522 (6th Cir. 2012) (applying the "inextricably intertwined" test in the context of the Labor Management Relations Act); *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (same).[7]  We use a two-part test to determine if a CBA precludes a claim:  (1) "whether proof of the . . . claim would require interpretation of the CBA; and (2) whether the right claimed by [the] plaintiff is created by the [CBA] or by [federal] law."  *Emswiler*, 691 F.3d at 792; *see also DeCoe*, 32 F.3d at 216 (applying the test in the context of the Labor Management Relations Act).  If an employee can show all the elements of their claim without invoking the CBA's terms, that claim is sufficiently independent of the CBA and can be heard by a federal court.  *DeCoe*, 32 F.3d at 216.

---

[7]Because both the RLA and LMRA preempt state-law claims implicating the meaning of CBA terms, we have frequently incorporated the standards governing preemption under the LMRA to address preemption and preclusion under the RLA.  *See Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 792 (6th Cir. 2012); *Stanley*, 808 F. App'x at 355.

When evaluating whether a claim is "inextricably intertwined" with the CBA, we have considered factors such as whether a litigant is "party to the CBA," *Powers v. Cottrell, Inc.*, 728 F.3d 509, 517 (6th Cir. 2013); whether the plaintiffs' claims "invoke rights or procedures under the CBA," *id.* at 517–18; and whether, even if resolving a claim "will not involve the direct interpretation" of a CBA's terms, doing so will "nonetheless require the court 'to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA,'" *Paul*, 701 F.3d at 522 (quoting *DeCoe*, 32 F.3d at 218)); *see also Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 355 (6th Cir. 2020) (applying *DeCoe* to an RLA case). Employers cannot claim that every employment dispute is precluded simply because a CBA provision is "tangentially involve[ed]," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211–12 (1985), or because of "the bare fact that a [CBA] will be consulted in the course of . . . litigation," *Powers*, 728 F.3d at 516 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). Kalitta bears the burden of showing that the CBA is inextricably intertwined with the Pilot Plaintiffs' claims, but Kalitta cannot establish preclusion just by asserting the CBA as an affirmative defense if those claims are otherwise independent of the CBA. *Paul*, 701 F.3d at 522.

We begin by looking at the elements of the Pilot Plaintiffs' Title VII and ADA claims, to determine if resolving them requires us to interpret the CBA. Under Title VII, it is unlawful for employers to discriminate against individuals because of their religion. 42 U.S.C. § 2000e-2(a)(1). Similarly, the ADA prohibits employers from discriminating against qualified individuals "on the basis of disability." 42 U.S.C. § 12112(a). The two statutes require employers to provide reasonable accommodations for religious beliefs or disabilities, respectively. If, however, an employer can demonstrate that providing such an accommodation to an individual with a protected characteristic would pose undue hardship to the operation of their business, they are not required to do so. 42 U.S.C. § 2000e(j) (Title VII); 42 U.S.C. § 12112(b)(5)(A) (ADA); *see also Groff v. DeJoy*, 600 U.S. 447, 468 (2023) (defining "undue hardship" under 42 U.S.C. § 2000e(j)). On appeal, both parties focus on whether a decisionmaker must interpret the CBA in order to determine whether granting an accommodation would impose an undue hardship on Kalitta under Title VII and/or the ADA. *See* Appellant Br.

at 23–25; Appellee Br. at 27–30.  For the purposes of this appeal, we assume that the Pilot Plaintiffs have made out their prima facie cases under Title VII and ADA.

The Pilot Plaintiffs' claims under Title VII and the ADA are created by federal law, rather than the CBA, and are precluded only if resolving the claims would require a court to interpret the CBA.  The district court dismissed the notion that three of the four accommodations that the Pilot Plaintiffs proposed (regular COVID-19 testing, masking, and obtaining natural immunity) would require it to interpret the CBA.  *Odell*, 678 F. Supp. 3d at 918.  It found, however, that the fourth proposed accommodation (that Kalitta not schedule unvaccinated pilots on flights to countries with vaccine requirements) "could displace the bids of other Kalitta pilots and impinge their seniority rights" and accordingly "would necessarily entail interpreting the CBA." *Id.* at 919.  On appeal, the Pilot Plaintiffs claim that granting an accommodation to the vaccine mandate would not require interpreting the CBA, because Kalitta pilots do not have "bidding, scheduling, or seniority rights that lock in a preferred flight route" and the CBA is "only incidental to [their] overriding discrimination claim."  Appellant Br. at 31–32.  Kalitta argues that granting such accommodations would "require it to violate multiple procedures and systems under the CBA, including, but not limited to, seniority, bidding[,] and scheduling." Appellee Br. at 21.

Under our precedent, requiring an employer to violate a CBA by taking actions that would affect seniority provisions can impose an undue hardship on that employer.  *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 521 (6th Cir. 2002).  Although the recent Supreme Court decision in *Groff v. DeJoy* altered the *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), framework that the *Virts* decision applied, employers are still not responsible for providing an accommodation if they can prove that doing so would impose a substantial hardship to their business. *Groff*, 600 U.S. at 468.  The Pilot Plaintiffs argue that no such burden exists here because the CBA does not grant pilots seniority rights with regards to destinations, so adjusting schedules to ensure that unvaccinated pilots would not fly to countries with vaccine mandates would, at most, tangentially involve the CBA.  Appellant Br. at 36.  However, pursuant to the CBA, Kalitta operates a "Bid Seniority List," R. 19-2 (CBA Excerpts at 11) (Page ID #297), which Kalitta claims allows pilots to submit their preferences for "dates and length of

travel, routes, layovers[,] and aircraft type," Appellee Br. at 12 (quoting R. 19-2 (CBA Excerpts at 7–8, 24–28) (Page ID #280–81, 297–301)). Determining whether adjusting flight schedules would constitute a sufficiently undue hardship to Kalitta would necessarily require a court to interpret the CBA to determine whether, and to what extent, senior pilots' bidding preferences would be impacted. *Cf. Paul*, 701 F.3d at 523; *see also Stanley*, 808 F. App'x at 356. Because the Pilot Plaintiffs' Title VII and ADA failure-to-accommodate claims cannot be resolved in full without interpreting the CBA, we hold that they are minor disputes and that we are therefore precluded from resolving these claims. We AFFIRM the district court's judgment.[8]

## C. Claims of Intentional Discrimination

On appeal, the Pilot Plaintiffs also claim that the magistrate and district judges focused only on their failure-to-accommodate claims, but that Kalitta had also applied the CBA in a discriminatory manner and was "on notice that it would face intentional discrimination claims." Appellant Br. at 54–58. The Pilot Plaintiffs argue that Kalitta "regularly arrang[ed] schedules" for pilots to ensure that those pilots were not flying to countries that they could not enter "for secular reasons," but "would never adjust [Pilot] Plaintiffs' schedules after they announced their religious objections." Appellant Br. at 56. Kalitta claims that the Pilot Plaintiffs forfeited their intentional discrimination claims because they first made such an argument in their Objections to the magistrate judge's Report and Recommendation. Appellee Br. at 33. In reply, the Pilot Plaintiffs claim that they "repeatedly advanced" their intentional discrimination claims to the magistrate judge before she issued the Report and Recommendation, citing their Opposition to the Motion to Dismiss, Motion for 56(d) Relief, and Reply in Support of Motion for 56(d) Relief in addition to their Objections to the magistrate judge's Report and Recommendation. Appellant Reply Br. at 19–20.

---

[8]On appeal, the Pilot Plaintiffs briefly raise a challenge to the district court's denial of their motion for additional discovery before ruling on Defendants' summary-judgment motion. Appellant Br. at 42–43. The district court, however, did not abuse its discretion in denying this request for additional discovery because it properly found that the discovery identified by the Pilot Plaintiffs would have been "irrelevant to the underlying issue to be decided." *In re Bayer Healthcare & Merial Ltd. Flea Control Prod. Mktg. & Sales Pracs. Litig.*, 752 F.3d 1065, 1074 (6th Cir. 2014).

When a party has "adverted to [an issue] in a perfunctory manner, unaccompanied by some effort at developed argumentation," we consider them to have forfeited the claim. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)). It is not for the court to "put flesh on [an argument's] bones." *Id.* at 996. Complaints do "not need to expressly plead legal theories," but rather must "plead factual allegations that impliedly establish[] at least one viable theory." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021). If a party raises an issue for the "first time in objections to [a] magistrate judge's report and recommendation," we generally consider it to be forfeited. *Morgan v. Trierweiler*, 67 F.4th 362, 367 (6th Cir. 2023) (alteration in original) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

We hold that the Pilot Plaintiffs have forfeited the intentional discrimination claim they bring on appeal. The Pilot Plaintiffs' Complaint does not appear to allege specifically that they were subject to intentional discrimination, apart from the retaliation claims in Counts II and IV that are not before us on appeal. In their brief, the Pilot Plaintiffs claim that they sufficiently alleged that they had been subjected to intentional discrimination, both via a disparate-treatment theory and through "direct evidence of unlawful discrimination." Appellant Br. at 54–59. Although they point to sections from their Complaint that they argue support their theory, *see* Appellant Br. at 55–56, 58–60, as well as from other filings with the district court, Appellant Reply Br. at 19, the Pilot Plaintiffs did not set forth a comprehensible disparate-treatment or intentional-discrimination claim before the magistrate judge issued her Report and Recommendation. The closest we can find in the cited documents is a statement that the "Defendants can *still* be liable under Title VII for intentional discrimination, even if they are permitted to pretextually invoke the CBA." R. 42 (Pls.' Reply in Supp. of Their Mot. to Den. at 4) (Page ID #535). In the complaint itself, the Pilot Plaintiffs did nothing more than state that Kalitta's "discriminatory actions were intentional and/or reckless" in both of its failure-to-accommodate claims, without any effort to develop these statements further. R. 1 (Compl. ¶¶ 281, 300) (Page ID #91, 94). There is no attempt in the complaint to establish that Pilot Plaintiffs are bringing a disparate-treatment claim. Because the Pilot Plaintiffs, at most, perfunctorily adverted to a distinct disparate-treatment or intentional-discrimination claim prior

to the magistrate judge issuing her Report and Recommendation, we hold that they forfeited this claim and that the district court did not err in adopting the magistrate judge's Report and Recommendation without considering this claim further.

### D. Claim of Discrimination Based on Perceived Disability (Count V)

Finally, the Pilot Plaintiffs argue that the district court erred in determining that their claim that they had been discriminated against "based on perceived disability," R. 1 (Compl. at 95) (Page ID #95), required it to interpret the CBA and was precluded by the RLA. Instead, they contend, the inquiry should focus on "Kalitta's discriminatory actions," rather than reasonable accommodation and undue hardship. Appellant Br. at 62. We hold that evaluating the merits of the Pilot Plaintiffs' regarded-as or perceived-disability claim will require a court to interpret the CBA's terms to reach a conclusion, and we affirm the district court's judgment.

The ADA's definition of "disability" includes: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The Plaintiffs allege that they were "regarded as" having an impairment and were subsequently denied reasonable accommodations. R. 1 (Compl. ¶¶ 311–17) (Page ID #96–97). We have stated that "regarded-as" claims do not require an "inquir[y] into 'reasonable accommodations,'" although the "plaintiff still must show that they are 'qualified' for a position." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 n.8 (6th Cir. 2019). However, ruling on the merits of the Pilot Plaintiffs' "regarded as" claims will still eventually require that a decisionmaker evaluate the CBA. If the Pilot Plaintiffs can make out a prima facie case that Kalitta discriminated against them because it regarded them as disabled, then under the *McDonnell Douglas* burden-shifting framework Kalitta will have to proffer a nondiscriminatory reason for its actions, which the Pilot Plaintiffs will then have to demonstrate is pretextual. *See id.* at 319–20. This, subsequently, will entail considering the CBA's relevant provisions surrounding accommodations to evaluate Kalitta's obligations under the CBA in order to determine whether Kalitta's actions are pretextual. The Pilot Plaintiffs' as-regarded claim is therefore precluded by the RLA.

Although they attempt to construe their argument as one challenging Kalitta's motives, the Pilot Plaintiffs would also not be able to operate in the same way that the other employees would absent an accommodation, because some countries had implemented vaccine requirements that the Pilot Plaintiffs would not be able to fulfill.  Because the Pilot Plaintiffs were fired and would, in fact, need an accommodation to continue their full employment, we hold that evaluating their regarded-as claim would require a court eventually to consider the accommodation options, which would in turn require it to assess the CBA's terms.  Accordingly, we AFFIRM the district court's conclusion that this claim is precluded by the RLA.

## III.  CONCLUSION

We AFFIRM the district court's final Order regarding the Pilot Plaintiffs.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1703

ROBERT W. ODELL, JR., et al.,

    Plaintiffs,

KEVIN WEBBER; AUSTIN ROBERT ISAAC HUDNUTT;
CHRISTIAN TOUGAS; CHARLES CHRISTIAN GALTON;
ESTATE OF KEVIN MCALLISTER,

    Plaintiffs - Appellants,

    v.

KALITTA AIR, LLC; CONRAD KALITTA, in his official capacity,

    Defendants - Appellees.

> **FILED**
> Jul 09, 2024
> KELLY L. STEPHENS, Clerk

Before: BATCHELDER, MOORE, and CLAY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Kelly L. Stephens, Clerk