UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT W. ODELL JR., et al.,

        Plaintiffs,                    Case No. 1:22-cv-12290

v.                                        Honorable Thomas L. Ludington
                                             United States District Judge
KALITTA AIR, LLC and CONRAD KALITTA
in his official capacity,

        Defendants.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO STRIKE
AND SETTING BRIEFING SCHEDULE**

On remand from the Sixth Circuit, Plaintiffs filed an Amended Complaint without obtaining leave. So Defendants filed a motion to strike the Amended Complaint under Civil Rule 12(f). But that Rule does not allow the striking of entire pleadings, and Plaintiff's Amended Complaint was consistent with this Court's scheduling order, which provided Plaintiffs leave to amend their complaint before a set deadline. Defendants' motion to strike will accordingly be denied. But this Court will issue a briefing schedule to allow Defendants to file a motion to dismiss the amended claims.

**I.**

**A. Factual Background**

In September 2021, the Biden Administration issued Executive Order 14042 ("the EO") as part of its efforts to slow the spread of the COVID-19 pandemic. The EO mandated that government contracts "include a clause" requiring the contractor and any subcontractors to "comply with all guidance . . . published by the Safer Federal Workforce Task Force" (the "Task Force"). Exec. Order No. 14042, 86 Fed. Reg. 50985 (Sep. 14, 2021). On September 24, 2021, the

Task Force published guidance that all "covered employees" be vaccinated by January 18, 2022. *See* Heidi M. Petters, Cong. Rsch. Serv., IN11803, Executive Order 14042 Requirements for COVID-19 Vaccination of Federal Contractors (last updated Dec. 3, 2021). These "covered employees" included those who worked in-person at the contractor's place of business and any remote employees who actively worked—directly or indirectly—on a federal contract. *See id.* But Defendant Conrad Kalitta—the sole owner of Defendant Kalitta Air, LLC—saw the EO and the Task Force's guidance as more sweeping.

Kalitta Air is a cargo airline and government contractor based in Ypsilanti, Michigan. ECF No. 1 at PageID.21. On October 11, 2021, in response to the EO, Kalitta issued a vaccine mandate to all of its employees, requiring their vaccination by December 8, 2021. ECF No. 1 at PageID.25–26. Indeed, four days after Kalitta announced the mandate, Conrad Kalitta sent a letter to all employees stating that, in his view of the EO, Kalitta would "lose all current and future Federal contracts" if its employees were not vaccinated. ECF No. 26-4 at PageID.357; *see also* ECF No. 1 at PageID.26–27 (alleging Conrad told Kalitta employees that the company "would risk loss of federal contracts if it did not reach a 100% vaccination rate").  He even offered to pay $1,000 to each employee who received the vaccine by the December 8 deadline. ECF No. 26-4 at PageID.357. And although the Biden Administration extended the EO's deadline to January 2022, Kalitta stuck to its initial December 8, 2021 deadline. *See* ECF No. 1 at PageID.28–29. ("Some of you have asked if those decisions will impact the enforcement of the Company's vaccination policy. The answer is no.").

Central to this case, Kalitta's mandate expressly allowed religious and medical exemptions. Defendants instructed employees who were "unable to receive a vaccination due to a disability or a sincerely held religious belief" to "request an accommodation" by October 31, 2021. *Id.* at

PageID.48. But, as alleged, this accommodation was an empty promise. Those who requested a medical accommodation were placed on unpaid leave for three months, while those who requested a religious accommodation were placed on unpaid leave for one year. *Id.* at PageID.27. Regardless of length, the result after leave was the same. After the unpaid leave period, the exempted, unvaccinated employee had two options: resign or be terminated. *See id.*

Kalitta also allegedly retaliated against its employees who sought accommodations by (1) "walking them off the property as if they had done something wrong," (2) "threaten[ing] fines against anyone not immediately returning company equipment," (3) "refus[ing] to bring employees back" after the "pandemic was meaningfully over" and (4) contesting unemployment insurance claims "for any employee who requested a religious exemption." *Id.* at PageID.13–14, 92.

### B. Procedural Posture

So, in September 2022, a group of eleven employees filed a putative class action complaint against Kalitta and Conrad. *See generally* ECF No. 1. The named Plaintiffs in the initial complaint are listed below:

1. **Robert Odell**: a flight maintenance engineer who worked at Kalitta's base in Oscoda, Michigan, and was terminated after requesting a religious accommodation;

2. **Gregory Pingot**: a lead avionics mechanic who worked at Kalitta's base in Oscoda, Michigan and was terminated after requesting a religious accommodation;

3. **Ann Kotula**: a calibration mechanic who worked at Kalitta's base in Oscoda, Michigan and was terminated after requesting a religious accommodation;

4. **Connie Joyce Jones**: an air frame and power plant mechanic who worked at Kalitta's base in Oscoda, Michigan, who was "forced to seek other employment" after requesting both religious and medical accommodations;

5. **Patricia Lynn Verlander**: a dispatcher who worked at Kalitta's Ypsilanti headquarters and was terminated after requesting a religious accommodation;

6. **Kevin Webber**: a captain who worked at Kalitta's Ypsilanti headquarters and was terminated after requesting a religious accommodation;

7. **Austin Robert Isaac Hudnutt**: a first officer who worked at Kalitta's hub in Cincinnati, Ohio, and was terminated after requesting a religious accommodation;

8. **Christian Tougas**: a first officer based in Traverse City, Michigan, who was "forced to seek other employment" after requesting religious and medical accommodations;

9. **Charles Christian Galton**: a first officer based in Buckley, Michigan, who was on medical leave at the time of Kalitta's vaccine mandate and was informed he would be terminated immediately upon return from leave after indicating he would not take the vaccine for religious reasons;

10. **Travis Wayne Robertson:** a flight maintenance engineer who worked at Kalitta's base in Oscoda, Michigan and was entitled to a religious accommodation but did not apply for one because he feared retaliation;

11. **Kevin McAllister**: a pilot based in Cumming, Georgia, who was "coerced into taking a COVID-19 vaccination" to keep his job after requesting a religious accommodation.

*Id.* at PageID.17–20.

These named Plaintiffs initially sought to certify a class defined as "all Kalitta employees entitled to accommodations from Kalitta's vaccine mandate and whose accommodation requests were denied (i.e., were 'approved' by the company with the promised accommodation of unpaid leave followed by termination) or otherwise foreclosed by the company's discrimination." *Id.* at PageID.85. And Plaintiffs indicated they would "ultimately seek" to certify the following four subclasses:

(1) employees who sought either a religious or medical accommodation (or both) and who could have been reasonably accommodated by Kalitta but were placed on unpaid leave pending termination instead;

(2) employees who abandoned their exemption from the mandate because of the company's unlawful actions that violated either their Title VII or ADA rights (or both);

(3) employees terminated from the company who were entitled to a Title VII or ADA exemption but did not seek an exemption through Kalitta's process because the "accommodation" announced from the outset was inevitable termination and those employees were (rightly) afraid of retaliation by the company for seeking an accommodation; and

(4) employees who were forced out of the company—either by termination or involuntary retirement—because Kalitta regarded them as having a disability due to their lack of vaccination, even though they were not a danger to others.

*Id.* at PageID.85–86.

Collectively, Plaintiffs alleged the following claims:

| Count | Named Plaintiffs | Claim |
|---|---|---|
| I | All | Religious Discrimination — Title VII, 42 U.S.C. § 2000e *et seq*. |
| II | Odell, Pingot, Koutla, Verlander, Webber, Hudnutt | Religious Retaliation — Title VII, 42 U.S.C. § 2000e *et seq*. |
| III | Jones, Tougas | Disability Discrimination — ADA, 42 U.S.C. § 12101 *et seq*. |
| IV | Jones, Tougas | Disability Retaliation —ADA, 42 U.S.C. § 12101 *et seq* |
| V | All | Discrimination "Based on Perceived Disability"[1] — ADA, 42 U.S.C. § 12101 *et seq*. |

*Id.* at PageID.89–97. And Plaintiffs ultimately sought damages and declarations that Defendants' vaccine mandate violated Title VII and the ADA. *Id.* at PageID.97–98.

But the case has since narrowed. In March 2023, this Court dismissed all individual-capacity claims against Defendant Conrad Kalitta because Plaintiffs conceded that he was not their "employer" for the purposes of Title VII and the ADA and could not be held individually liable simply because he owned Plaintiff's true employer—Defendant Kalitta Air. *See* ECF Nos. 35; 36. And, in June 2023, this Court held that the Railway Labor Act (RLA) precluded the five "Pilot

---

[1] Plaintiffs alleged that Defendants perceived all unvaccinated employees "as though they were perpetually infected with COVID-19" and, thus, disabled. ECF No. 1 at PageID.96–97.

Plaintiffs"—Webber, Hudnutt, Tougas, Galton, and McAllister—from bringing their alleged discrimination claims, Counts I, III, and V. *See* ECF Nos. 43; 45. Although the retaliation claims in Counts II and IV were not precluded, this Court dismissed Galton and McAllister as named Plaintiffs because they, specifically, did not plead any retaliation claim. *See id.*

In July 2024, the Sixth Circuit affirmed this Court's RLA holding, the dismissal of the Pilot Plaintiff's discrimination claims, and the dismissal of Galton and McAllister. *See Odell v. Kalitta Air, LLC*, 107 F.4th 523 (6th Cir. 2024). Notably, on appeal, the Pilot Plaintiffs argued that they initially pleaded *intentional discrimination* and *disparate-treatment* claims, and such claims were not precluded by the RLA. *Id.* at 532. But the Sixth Circuit rejected that argument and held the Pilot Plaintiffs forfeited such claims because they did not allege or develop them in any non-perfunctory manner. *Id.* at 533.

After receiving the Sixth Circuit's mandate, this Court issued an order on August 28, 2024, directing the Parties to submit material for the preparation of a scheduling order. ECF No. 58. Among other things, this Order directed the Parties to indicate whether they intended to amend pleadings or add parties. *Id.* at PageID.837. In response to the Parties' submission, this Court issued its scheduling order on September 27, 2024. ECF No. 59. This Order indicated that the "deadline to amend/add parties" was November 20, 2024. *Id.* at PageID.838.

On November 20, 2024, Plaintiffs filed an Amended Complaint. ECF No. 60. Importantly, the Amended Complaint does not simply repackage the case as narrowed by this Court and the Sixth Circuit. Indeed, the Amended Complaint seemingly seeks to hold Conrad Kalitta liable in his individual capacity. *See id.* at PageID.848. And the Amended Complaint includes previously dismissed Pilot Plaintiffs Galton and McAllister, who now seek to join the religious retaliation claim initially pleaded in Count II. *See id.* at PageID.849 n. 1, 958. Most importantly, the Amended

Complaint seeks to add two entirely new disparate-treatment claims. *See id.* at PageID.949–58 (Count II), PageID.969–78 (Count V).

On December 4, 2024, Defendants filed a motion to strike Plaintiffs' Amended Complaint under Civil Rule 12(f) because Plaintiffs did not first obtain leave to file it as required by Civil Rule 15(a). *See* ECF No. 64.

## II.

Civil Rule 15 governs amended and supplemental pleadings. At this juncture—long after 21 days since Defendants' response and long before trial—Plaintiffs may only amend their complaint "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). And although courts should "freely give leave when justice so requires," *id.*, courts should not grant leave in the presence of undue delay, bad faith, or if the proposed amendment is futile and could not withstand a Rule 12(b) motion to dismiss. *See Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 751 (E.D. Mich. 2010), *aff'd*, 483 F. App'x 85 (6th Cir. 2012) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Separately, Civil Rule 12(f) allows courts to "strike from a pleading" any "insufficient defense or redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Striking is generally disfavored and granted only where the subject matter to be stricken is clearly immaterial or prejudicial. *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953).

## III.

As a threshold issue, Defendants' Motion to Strike Plaintiffs' Amended Complaint is predicated entirely on Rule 12(f). *See* ECF No. 64 at PageID.1091. But this narrow Rule does not provide the broad relief Defendants seek. Rule 12(f) does not allow courts to strike pleadings in

their entirety. *See Honeyman v. Evers*, No. 2:14-CV-13497, 2017 WL 405938, at *1 (E.D. Mich. Jan. 31, 2017); *Dragovic v. Enprotech Steel Servs.*, No. 1:10-CV-1250, 2010 WL 4739931, at *2 (N.D. Ohio Nov. 15, 2010). To the contrary, the Rule allows courts to strike specific material "*from*" a pleading, not the pleading itself. FED. R. CIV. P. 12(f) (emphasis added). Although this Court could construe Defendants' motion as seeking "to strike any allegedly improper *paragraphs* of the amended complaint," *id.* (emphasis added), Defendants have not identified these specific paragraphs, and the Parties have not been allowed to argue whether these paragraphs contain prejudicial or immaterial information.

Rule 12 aside, Plaintiff's Amended Complaint complied with Rule 15. Contrary to Defendants' contention, this Court's September 2024 Scheduling Order expressly provided Plaintiffs leave to amend their initial complaint and add parties by November 20, 2024. ECF No. 59 at PageID.838. This deadline was established "in direct response" to the Parties' joint case management submission,[2] which indicated Plaintiffs' desire to amend their complaint. *Dragovic*, 2010 WL 4739931, at *2.

Accordingly, Defendants' Motion to Strike will be denied. But this Court recognizes Defendants have not had the opportunity to argue Plaintiffs' amended claims are futile or are otherwise insufficiently pleaded. So, as Defendants alternatively request, *see* ECF No. 64 at PageID.1099, this Court will set a briefing schedule for a motion to dismiss the amended claims.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion to Strike, ECF No. 64, is **DENIED.**

---

[2] The Parties' submission is not on the electronic docket but remains on physical file with this Court.

Further, it is **ORDERED** that the Scheduling Order, ECF No. 59, is **AMENDED** as reflected in the table below. This Court will issue a full scheduling order after the motion-to-dismiss stage.

| Defendants' Motion to Dismiss the Amended Complaint Due: | August 11, 2025 |
| Plaintiffs' Response to Defendants' Motion to Dismiss Due: | September 2, 2025 |
| Defendants' Reply in Support of Dismissal Due: | September 16, 2025 |

**This is not a final order and does not close the above-captioned case.**

Dated: July 29, 2025                         s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge